IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAWRENCE R. MOYER,

    Plaintiff,                    No. CIV S-03-1350 FCD DAD P

    vs.

JAMES E. TILTON, et al.,

    Defendants.                <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding through counsel. He has filed a civil rights action pursuant to 42 U.S.C. § 1983 on behalf of himself and all others similarly situated, challenging the constitutionality of California Penal Code § 2085.5. Defendants Tilton, Shepherd, Shaffer, and Woodford, four past and present officials at the California Department of Corrections and Rehabilitation ("CDCR"), have filed a motion to dismiss the complaint. Plaintiff has filed an opposition, and defendants have filed a reply. On June 8, 2007, this court heard oral arguments from the parties and took the matter under submission.

**BACKGROUND**

I. <u>Plaintiff's Allegations</u>

        In 1987, plaintiff was convicted, sentenced, and ordered to pay a restitution fine of $5,000. Plaintiff alleges that California Penal Code § 2085.5, the relevant provisions of which

took effect in 1995, is unconstitutional.  Section 2085.5 requires the CDCR to garnish a portion of each prisoner's wages and deposits to pay toward restitution fines.  It also requires CDCR to deduct an administrative fee equal to ten percent of the amount garnished.  Plaintiff does not challenge CDCR's garnishment of the wages and deposits credited to his restitution fine, but, rather, challenges CDCR's deduction of the administrative fee.  Under § 2085.5, a prisoner does not receive credit toward the restitution fine for the amounts taken as an administrative fee.[1]  In addition, the administrative fee has no relation to the pro rata share of each prisoner's administrative expenses for the garnishment program.

Plaintiff claims that § 2085.5 violates (1) the Ex Post Facto Clause of the United States Constitution for every prisoner whose sentence includes a restitution fine for an offense prior to 1995; (2) the Ex Post Facto Clause of the California Constitution for every prisoner whose sentence includes a restitution fine for an offense prior to 1995; (3) the Takings Clause of the United States Constitution; and (4) the Takings Clause of the California Constitution.

Plaintiff seeks "credit, damages, equitable restitution, and/or recovery of all sums taken under section 2085.5, and prejudgment and post-judgment interest."  More precisely, plaintiff has sued defendants in their official capacities for declaratory relief and equitable relief, including restitution and an injunction prohibiting them from further enforcing § 2085.5 and any related regulations.  In addition, plaintiff has sued defendants in their individual capacities for damages to the extent that restitution would not make plaintiff whole.

Plaintiff seeks to represent a class composed of all persons sentenced by the State of California to a restitution fine who have been subject to the § 2085.5 administrative fee.  In

---

[1] The administrative fee under § 2085.5 existed prior to 1995, but CDCR deducted the fee from the amount garnished after the balance of the prisoner's outstanding restitution fine was credited.  For example, if CDCR withheld $10 from a prisoner's wages, CDCR would retain $1 of that $10 as an administrative fee, but the prisoner would receive a full $10 deduction from the balance of his restitution fine.  Now, the administrative fee is deducted before the balance of a prisoner's outstanding restitution fine is credited.  CDCR will withhold an additional dollar for the same $10 deduction, for a total deduction of $11, but the prisoner only receives a $10 deduction from the balance of his restitution fine.

addition, plaintiff seeks to represent a subclass that consists of all persons who have been sentenced for offenses committed prior to January 1, 1995. Although plaintiff has included class action allegations in his second amended complaint, he has not filed a motion for class certification.

II. Procedural History

In 2003, plaintiff filed an amended complaint which the court dismissed for failure to state a claim upon which relief can be granted. Plaintiff appealed the decision, and in 2006, the United States Court of Appeals for the Ninth Circuit reversed and remanded the case, holding that plaintiff pled a colorable Ex Post Facto Clause claim under the United States Constitution. Moyer v. Alameida, No. 04-16145, 2006 WL 1666690 (9th Cir. June 9, 2006). After remand, plaintiff filed a second amended complaint adding a state Ex Post Facto Clause claim and federal and state Takings Clause claims. The second amended complaint is the operative pleading in this action.

On April 18, 2007, defendants filed the instant motion to dismiss. On May 22, 2007, plaintiff filed an opposition. On June 1, 2007, defendants filed a reply. On June 8, 2007, this court heard oral arguments from the parties and took the matter under submission. No other motions or requests are pending.

**LEGAL STANDARDS APPLICABLE TO A MOTION TO DISMISS**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint, or any claim within it, "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). See also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). In order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1965 (2007).

In determining whether a pleading states a claim, the court accepts as true all material allegations in the complaint and construes those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hosp. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In the context of a motion to dismiss, the court also resolves doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

## THE PARTIES' ARGUMENTS

Defendants argue that: (1) plaintiff's state Ex Post Facto Clause claim and state Takings Clause claim should be dismissed because plaintiff has failed to allege compliance with the claims presentation requirement of the California Tort Claims Act; (2) plaintiff's federal Takings Clause claim is not ripe for review; (3) plaintiff has not alleged a "taking" within the meaning of the federal Takings Clause or the state Takings Clause because the CDCR's deduction of an administrative fee amounts to a reasonable user fee rather than a taking; (4) plaintiff's federal claims should be dismissed because defendants are entitled to qualified immunity, and the state claims should be dismissed because defendants are entitled to statutory immunity. (Defs.' Mot. to Dismiss at 3-15.)

In opposition to the pending motion to dismiss plaintiff argues that: (1) the CTCA does not apply to his state Ex Post Facto Clause claim, and his state Takings Clause claim is exempt from the CTCA; (2) his federal Takings Clause claim is ripe if damages are not available under the state Takings Clause; (3) defendants' Takings Clause arguments are premature; and (4)
/////

1  the court should defer adjudication of federal and state immunities until discovery is complete.
2  (Pl's. Opp'n to Defs.' Mot. to Dismiss at 3-16.)
3          In reply, defendants concede that California Government Code § 905.1 seems to
4  apply to exempt plaintiff's state Takings Clause claim from the CTCA claims presentation
5  requirement but argue that plaintiff is required to file a state inverse condemnation suit before
6  bringing an action in federal court.

7  **ANALYSIS**

8  I. <u>Threshold Issues</u>
9     A. <u>Plaintiff's State Claims and Compliance with the CTCA</u>
10        1. <u>Plaintiff's State Ex Post Facto Claim</u>
11          Under the CTCA, plaintiff may not maintain an action for monetary damages
12  against a public employee unless he has first presented a written claim to the state Victim
13  Compensation and Government Claims Board, and the Board has acted on it.  <u>See</u> Cal. Gov't
14  Code §§ 905, 905.2, 945.4, & 950.2.  Plaintiff alleges that defendants have violated his rights
15  under the state Ex Post Facto Clause.  However, plaintiff has not pled or otherwise demonstrated
16  compliance with the CTCA claims presentation requirement.  Failure to present a timely claim
17  for money or damages against a public employee bars plaintiff from bringing suit for damages
18  against the public employee.  <u>See</u> <u>State v. Superior Court (Bodde)</u>, 32 Cal. 4th 1234, 1237, 1239
19  (2004); <u>see also</u> <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 627 (9th Cir. 1988)
20  (state law claims are subject to dismissal for failure to comply with the CTCA claims
21  presentation requirement); <u>Spence v. State of California</u>, No. CIV S-03-1195 LKK DAD P (E.D.
22  Cal. Oct. 1, 2004) (order adopting findings and recommendations to dismiss plaintiff's state
23  constitutional claims for failure to comply with CTCA claims presentation requirement).
24          Plaintiff's reliance on <u>Garcia v. Los Angeles Unified Sch. Dist.</u>, 173 Cal. App. 3d
25  710 (Cal. Ct. App. 1985), is misplaced.  In that case, the California Supreme Court held that a
26  former school teacher's claims under the California Fair Employment and Housing Act

("FEHA") were not subject to the CTCA's claims presentation requirement. Id. at 711. The court explained, "[t]he FEHA not only creates a statutory cause of action, but sets out a comprehensive scheme for administrative enforcement, emphasizing conciliation, persuasion and voluntary compliance, and containing specific limitations periods." Id. The court emphasized that the legislative intent behind the FEHA was to exempt FEHA actions from the CTCA claims presentation requirement. The court noted that the procedural guidelines and time framework provided in the FEHA are special rules for these particular types of claims, which control over the general rules governing claims against governmental entities. Id.

In contrast, California regulations that authorize and provide the structure for the prison administrative grievance process do not create an independent cause of action and do not reflect an intent to exempt prisoner suits from the CTCA claims presentation requirement. While FEHA claims have been treated uniquely by courts because of the legislative intent behind the statute and the comprehensive scheme that statute provides, the same considerations do not exist here to justify exempting prisoner suits from the CTCA claims presentation requirement. In this regard, plaintiff's reliance on the decision in Wright v. State, 122 Cal. App. 4th 659 (2004), is also misplaced. In Wright, a prisoner filed a complaint against the Department of Corrections, alleging state claims and federal claims. The court held that Wright had not exhausted his administrative remedies and therefore the action was barred. Id. at 667-68. The court did not consider whether Wright had to comply with the CTCA claims presentation requirement, presumably because he had already complied with it. Unlike the plaintiff here, Wright had filed a government tort claim with the State Board of Control, which the Board subsequently rejected. Id. at 663. Nowhere did the court indicate that Wright was exempt or excused from complying with the CTCA claims presentation requirement. If anything, it appears that the requirement was a non-issue in that case.

/////

/////

Accordingly, defendants' motion to dismiss plaintiff's state Ex Post Facto claim for failure to comply with the CTCA claims presentation requirement should be granted to the extent that plaintiff seeks monetary damages.

### 2. Plaintiff's State Takings Clause Claim

Plaintiff alleges that defendants have violated his rights under the state Takings Clause. As both parties acknowledge, § 905.1 of the California Government Code expressly exempts plaintiff's state Takings Clause claim from the CTCA claims presentation requirement. Specifically, § 905.1 states: "No claim is required to be filed to maintain an action against a public entity for taking of, or damage to, private property pursuant to Section 19 of Article I of the California Constitution."

Accordingly, defendants' motion to dismiss plaintiff's state Takings Clause claim for failure to comply with the CTCA claims presentation requirement should be denied.

### B. Ripeness of Plaintiff's Federal Takings Clause Claim

The Supreme Court has applied a two-part ripeness test to claims that government regulations effect a taking. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985). See also Milagra Ridge Partners v. City of Pacifica, 62 Cal. App. 4th 108, 117-120 (1998) (discussing Williamson ripeness requirement). First, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson County Regional Planning Comm'n, 473 U.S. at 186. Second, a claimant must "seek compensation through the procedures the State has provided for doing so." Id. at 194. In Williamson, a land developer had sought approval from a county planning commission for development of a land tract. Id. at 177-81. The commission disapproved of the plan based on new zoning ordinances and subdivision regulations. Id. at 181-82. The developer's successor in interest, Hamilton Bank, filed a § 1983 action, alleging that the commission had taken its property without just

7

compensation. Id. at 181-82. The Supreme Court determined that the Hamilton Bank's claim was not ripe for review since the bank had not yet obtained a "final decision" regarding how it would be able to develop its property because it had not, for example, submitted variances to the Board. Williamson County Regional Planning Comm'n, 473 U.S. at 188-90. In addition, it had not sought compensation through the state's inverse condemnation procedure or demonstrated that such a procedure was unavailable or inadequate. Id. at 193-94.

The Ninth Circuit has not applied the Williamson ripeness requirement in a case similar to the instant one, involving a transfer of funds as opposed to the burdening of real property. However, the Fourth Circuit has determined that in such a context, so long as a Takings Clause claim is sufficiently mature, defined, and immediate, it is ripe for review. Washlefske v. Winston, 234 F.3d 179, 183 (4th Cir. 2000), cert. denied 532 U.S. 983 (2001). See also Asociacion de Subscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Galarza, 484 F.3d 1, 14-15 (1st Cir. 2007) (Williamson prudential factors do not prevent review of Takings challenge to statute that effectively required a direct transfer of funds and did not involve burdening of real or physical property).

In Washlefske, a prisoner brought a § 1983 action alleging that prison officials violated the Takings Clause when they took interest from his inmate trust account and spent it for the general benefit of the prison population. 234 F.3d at 182. Pursuant to state regulations, all prisoner funds were pooled and invested at the discretion of the director of the Department of Corrections. Id. at 181. At the outset, the Fourth Circuit held that Washlefske's Takings Clause claim was sufficiently ripe for review under Williamson. Id. at 182. The court explained that ripeness in this context did not refer to Article III's case or controversy requirement, but rather referred to "prudential ripeness–whether we *should* exercise federal jurisdiction." Id. The court noted that, in Williamson, state agencies had not reached a final decision on the nature and impact of the state's actions, so the landowner's injury in that case was too uncertain to satisfy the requirements of prudential ripeness. Id. However, the court also noted that once a state

1  regulatory process has come to an end, and a landowner can take no further administrative steps
2  to obtain the state's final position, the "final decision" requirement in Williamson is satisfied. Id.
3  (citing Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 739 (1997)).

4         Lastly, the Fourth Circuit explained that the finality of the state's position had not
5  been questioned. Washlefske, 234 F.3d at 182.  The court noted that the statute's language was
6  clear and its impact on Washlefske was undisputed. Id.  The court found that, "[n]ot only is the
7  State's use of the interest uncontroverted, but also its amount is readily calculable, more than
8  satisfying the Supreme Court's prudential ripeness requirements." Id. at 182.  Accordingly, in
9  concluding that Washlefske could proceed on his Takings Clause claim in federal court, the
10 Fourth Circuit refused to require the plaintiff to file his claim in state court and transform
11 Williamson's finality rule into a rule of exhaustion. Id. at 183.

12         Here, just as in Washlefske, the undersigned finds that plaintiff's federal Takings
13 Clause claim is sufficiently mature, defined, and immediate to be ripe for review.  Plaintiff
14 challenges a statute that is clear in its language as well as in its application.  In addition, the
15 amount of the alleged "taking" is readily calculable.  Plaintiff has paid $81.00 in administrative
16 fees for which his restitution fine has not been credited.  Finally, the state's use of these
17 administrative fees is uncontroverted.  Under § 2085.5, CDCR deposits the administrative fee in
18 an account for administrative and support costs of the restitution program. Cal. Gov't Code §
19 2085.5.  The only question then is the legality of the state's program.  Under these circumstances,
20 this court should not require plaintiff to file his claim in state court or with the Victims
21 Compensation Board.  As the court in Washlefske noted, such a requirement "would be in
22 diametric opposition to a foundational decision of modern § 1983 jurisprudence, Monroe v.
23 Pape, [365 U.S. 167, 183 (1961),] which held that '[t]he federal remedy is supplementary to the
24 /////
25 /////
26 /////

State remedy, and the latter need not be first sought and refused before the federal one is invoked.'"[2] Id. at 183.

Accordingly, defendants' motion to dismiss plaintiff's federal Takings Clause claim as unripe should be denied.

II. Cognizable Claims Under the Federal and State Takings Clauses

The Fifth Amendment Takings Clause provides: "[Nor] shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The California Takings Clause similarly provides: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."[3] Cal. Const. art. I, § 19. California courts have interpreted the state's Takings Clause congruently with the federal Takings Clause. San Remo Hotel L.P. v. City and County of San Francisco, 27 Cal. 4th 643, 664 (2002).

"[A] reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." United States v. Sperry, 493 U.S. 52, 63 (1989). See also Vance v. Barrett, 345 F.3d 1083, 1089 (9th Cir. 2003) (holding that prison officials could deduct "applicable charges" to pay for expenses incurred in creating and maintaining prison trust accounts); Abney v. Alameida, 334 F. Supp. 2d 1221, 1228 (S.D. Cal. 2004) (holding that a two

---

[2] It is noteworthy that when the Ninth Circuit has faced a claim similar to the one the Fourth Circuit addressed in Washlefske, it has exercised jurisdiction without expressing any reservation as to whether jurisdiction existed. Schneider v. California Dep't of Corrections, 345 F.3d 716, 720 (9th Cir. 2003) ("California's scheme perpetrates a taking because it appropriates the interest earned by the [inmates' trust accounts] and allocates [it] for a public use."). Moreover, as the U.S. Supreme Court has recognized, "'while we are not bound by previous exercises of jurisdiction in cases in which our power to act was not questioned but was passed *sub silentio*, neither should we disregard the implications of an exercise of judicial authority assumed to be proper' in previous cases." Eastern Enters. v. Apfel, 524 U.S. 498, 522 (1998) (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 307 (1962)). See also Washlefske v. Winston, 234 F.3d 179, 183 (4th Cir. 2000), cert. denied 532 U.S. 983 (2001).

[3] The language "damaged for public use," a phrase not at issue in this case, is the only language in the California Takings Clause that does not have a corresponding language in the Fifth Amendment Takings Clause. San Remo Hotel v. City and County of San Francisco, 27 Cal. 4th 643, 664 (2002).

percent administrative fee taken from deposits made to prisoners' trust accounts to make restitution payments constituted a reasonable user fee). In Sperry, the Sperry Corporation had received an award from the Iran-United States Claims tribunal. Sperry, 493 U.S. at 57. Pursuant to federal statute, the Federal Reserve Bank paid a portion of the award to the United States Government. Sperry, 493 U.S. at 57. Sperry alleged that the portion or fee paid to the federal government was unconstitutional. Id. at 57-58.

Disagreeing, the U.S. Supreme Court held that the fee was not an unconstitutional taking without just compensation. Id. at 60-63. The Court explained that the statute specifically provided that the deductions were made as "reimbursement to the United States Government for expenses incurred in connection with the arbitration of claims of United States claimants against Iran before [the] Tribunal and the maintenance of the Security Account." Id. at 60. The Court rejected Sperry's argument that the deduction was improper because the government had not shown that it approximated the cost of the Tribunal to the United States nor demonstrated that it bore any relationship to plaintiff's use of the Tribunal or the value of the Tribunal's services to plaintiff. Id. at 60-61. The Court emphasized that it "has never held that the amount of a user fee must be precisely calibrated to the use that a party makes of Government services." Id. The Court noted that "the Just Compensation Clause 'has never been read to require the . . . courts to calculate whether a specific individual has suffered burdens . . . in excess of the benefits received' in determining whether a 'taking' has occurred." Id. at 60 n.7. The Supreme Court concluded that in that case the deductions were not so excessive as to belie their purported character as user fees. Id. at 62.

In this case, plaintiff alleges that the administrative fee under § 2085.5 effects an unconstitutional taking. As amended in 1994, § 2085.5(c) provides as follows:

> The director shall deduct and retain from the wages and trust account deposits of a prisoner, unless prohibited by federal law, an administrative fee that totals 10% of any amount transferred to the State Board of Control pursuant to subdivisions (a) or (b) of section 13967 of the Government Code. . . . The director shall

11

> deposit the administrative fee moneys in a special deposit account for reimbursing administrative and support costs of the restitution program of the Department of Corrections. The director, at his or her discretion, may retain any excess funds in the special deposit account for future reimbursement of the department's administrative and support costs for the restitution program or may transfer all or part of the excess funds for deposit in the restitution fund.

Moyer v. Alameida, No. 04-16145, 2006 WL 1666690 at *1 (9th Cir. June 9, 2006).

Unlike the situation presented in Sperry, this court cannot say that the administrative fee taken pursuant to § 2085.5 fits within the category of reasonable user fees. On appeal in this action, the Ninth Circuit did not have the opportunity to address plaintiff's new Takings Clause claims. However, in addressing whether plaintiff's challenge to § 2085.5 pled a colorable Ex Post Facto claim, the court expressed skepticism regarding the nature of, and the intent behind, the ten percent administrative fee at issue here. In this regard, the Ninth Circuit raised serious questions about the reasonableness of the fee and the relationship (or lack thereof) between that fee and the alleged costs of the garnishment program.

In this regard, the Ninth Circuit noted that there was contradictory evidence regarding the legislature's intent in passing § 2085.5 as well as evidence indicating that the fee was punitive in effect. Moyer v. Alameida, No. 04-16145, 2006 WL 1666690 at *3 (9th Cir. June 9, 2006). The court acknowledged that, on its face, § 2085.5 appeared non-punitive and civil in nature. Id. The court noted that the statute calls the ten percent surcharge an "administrative fee" and directs the director to deposit the "administrative fee moneys" in an account for reimbursing the administrative and support costs of the restitution program. Id. However, the court also noted that a deeper analysis of the legislative history behind the act suggested that the California Legislature's "real purpose" in amending § 2085.5 was a desire to raise additional revenue for restitution, not administrative costs. Id. In this vein, the court explained that prior to the 1994 amendments, § 2085.5 already provided for collection of fees to reimburse administrative costs. Id. In the court's view, "[b]ecause the fee under section 2085.5

12

was 10% of garnished payments both before and after the 1994 amendment, the amendment did not increase reimbursement of administrative and support costs at all, which means that the 1994 amendment could not advance the stated goal." Id.

The court also noted that the committee reports suggested that legislators passed the amendment in response to a budget shortfall. Moyer v. Alameida, No. 04-16145, 2006 WL 1666690 at *4 (9th Cir. June 9, 2006). As the court explained, "[b]y shifting the fee to prisoners and not deducting the fee from the balance of prisoner's fines, the legislature increased funds available for restitution without having to acquire additional money through the state's general fund." Id. The court explained that this shift in the fee indicated that the legislature's actual intent in amending § 2085.5 was to increase restitution payments by prisoners. Id. The court maintained that "the cost-shifting portion of the amendment bears no rational relation to the legislatures' stated non-punitive purpose." Id. at *6. Finally, the court explained that the language used in § 2085.5 suggests a punitive intent because excess fees may be paid into the restitution fund at the discretion of the Director of the Department of Corrections. Moyer v. Alameida, No. 04-16145, 2006 WL 1666690 at *3 (9th Cir. June 9, 2006). Thus, the court observed that "even if this 'user fee' is intended to serve an administrative purpose, it also significantly promotes retribution and deterrence." Id.

Although an administrative fee need not be "precisely calibrated," it appears that the fee at issue here may not be calibrated at all to the costs of the garnishment program. In this regard, at this stage of the proceedings the court cannot determine whether the fee taken pursuant to § 2085.5 is reasonable without evidence of the actual administrative costs of the restitution program and the actual fees collected by the CDCR.

Accordingly, defendants' motion to dismiss plaintiff's federal and state Takings Clause claims for failure to state a cognizable claim should be denied.

/////

/////

III. Immunity

    A. Qualified Immunity

        The threshold question for a court required to rule on qualified immunity is as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court determines that no constitutional right would have been violated if plaintiff's allegations were established, the court does not need to proceed to further inquiries concerning qualified immunity. Id. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. As the Supreme Court has explained, this inquiry should be taken in light of the specific context of the case and not as a general proposition. Id.

        Even assuming *arguendo* that plaintiff has a constitutional right under the federal Ex Post Facto Clause and defendants have violated the right, the right was not clearly established at the time of the actions placed in issue by the second amended complaint were undertaken. Whether an administrative fee attached to plaintiff's restitution fine constituted a violation of the Ex Post Facto Clause was an issue of first impression in the federal courts when the Ninth Circuit issued its decision in this case on appeal. Moyer v. Alameida, No. 04-16145, 2006 WL 1666690 at *2 (9th Cir. June 9, 2006).[4] No reasonable official could have known that his conduct, in accordance with a duly enacted statute, violated a clearly established constitutional right. See, e.g., Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994) ("[T]he existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional.").

        Similarly, assuming *arguendo* that plaintiff has a constitutional right under the federal Takings Clause and defendants have violated the right, that right was not clearly

---

[4] As noted, this court had dismissed plaintiff's complaint for failure to state a claim upon which relief could be granted.

established at the time of the actions placed in issue by the second amended complaint were undertaken.  Whether an administrative fee attached to plaintiff's restitution fine constituted a violation of the Takings Clause was also an issue of first impression in the federal courts.  No reasonable official could have known that his conduct, in accordance with a duly enacted statute, violated a clearly established constitutional right.  See, e.g., Grossman, 33 F.3d at 1209-10 (officer entitled to qualified immunity when enforcing a duly promulgated ordinance that was not so obviously unconstitutional).

Plaintiff's argument that the court should wait until after discovery has been concluded in this case before determining whether defendants are entitled to qualified immunity is unpersuasive.  Discovery will not reveal any new relevant facts or improper motivations by defendants because their actions were non-discretionary and involved a straightforward application of the law.  See, e.g., Hansen v. California Dep't of Corrections, 920 F. Supp. 1480, 1485 (N.D. Cal. 1996) ("[A] public official should be immune from liability for non-discretionary acts performed in good faith pursuant to a policy instituted by higher authorities unless a reasonable official would have known that the policy was unconstitutional."). Moreover, as the Supreme Court has noted, "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier, 533 U.S. at 200.  See generally 15 Am. Jur. 2d Civil Rights § 123 (Apr. 2007) ("If the issue of qualified immunity is raised, the court should attempt to resolve the issue before permitting discovery.")

Accordingly, defendants' motion to dismiss plaintiff's federal claims under the Ex Post Facto Clause and Takings Clause on grounds of qualified immunity should be granted to the extent that plaintiff seeks monetary damages from defendants in their individual capacity.

B. Statutory Immunity

Under California law, "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." Cal. Gov't Code § 820.4.  In

15

addition, "[i]f a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." Cal. Gov't Code § 820.6. See generally Cal. Civ. Practice Torts § 29:20 (Apr. 2007) (specific statutory immunities).

In this case, defendants were enforcing a duly enacted state statute. No court had held the statute unconstitutional or even questioned its validity until this case was filed. Defendants could not have been expected to second-guess this state statute by engaging in a constitutional analysis to predict whether a court would uphold it. Even if § 2085.5 is ultimately held to be unconstitutional, this court cannot say that defendants' actions were unreasonable or demonstrated a lack of "due care" in light of the statute and its mandate.

Accordingly, defendants' motion to dismiss plaintiff's state Ex Post Facto Clause and Takings Clause claims on grounds of statutory immunity should be granted to the extent that plaintiff seeks monetary damages from defendants in their individual capacity.

## CONCLUSION

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss be granted in part and denied in part as follows:

1. Defendants' motion to dismiss plaintiff's state Ex Post Facto claim for failure to comply with the CTCA be granted to the extent plaintiff seeks monetary damages;

2. Defendants' motion to dismiss plaintiff's state Takings Clause claim for failure to comply with the CTCA be denied;

3. Defendants' motion to dismiss plaintiff's federal Takings Clause claim as unripe be denied;

4. Defendants' motion to dismiss plaintiff's federal and state Takings Clause claims for failure to state a cognizable claim be denied;

/////

1     5. Defendants' motion to dismiss plaintiff's federal Ex Post Facto Clause and Takings Clause claims on grounds of qualified immunity be granted to the extent plaintiff seeks monetary damages from defendants in their individual capacity; and

     6. Defendants' motion to dismiss plaintiff's state Ex Post Facto Clause and Takings Clause claims on grounds of statutory immunity be granted to the extent plaintiff seeks monetary damages from defendants in their individual capacity.

     These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 19, 2008.

                                        /s/ Dale A. Drozd
                                        DALE A. DROZD
                                        UNITED STATES MAGISTRATE JUDGE

DAD:9
moye1350.57rev